NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RANDALL THOMAS ZELLARS, ) | |
| ) | |
| Plaintiff, ) | Civil No. 6:09-CV-406-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| JEFF CULVER, Chief of Police; and ) | **AND ORDER** |
| CITY OF MANCHESTER, KY, ) | |
| ) | |
| Defendants. ) | |

\*\* \*\* \*\* \*\* \*\*

Plaintiff Randall Thomas Zellars, a resident of Manchester, Kentucky, has submitted a *pro se* Complaint, in which he alleges violations of certain of his federal rights by persons acting under State law. 42 U.S.C. § 1983. His accompanying Motion to Proceed *in forma pauperis* has been granted by separate Order. This matter is now before the Court for consideration of two pending Motions and for the purpose of screening the Complaint pursuant to 28 U.S.C. § 1915 and *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).[1] For the reasons set forth below, the Court will dismiss this Complaint.

**I.**

The Plaintiff has been before this Court – and other courts – before. Two criminal proceedings against him are relevant to this case. They have been summarized by the appellate

---

[1] A *pro se* pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

court in this circuit, as follows:

> . . . In 1973 Zellars entered a guilty plea in the Court of Common Pleas in Clinton County, Ohio, to an indictment charging him with unlawfully, maliciously, and forcibly breaking and entering Laurel Oaks Career Development Campus at night with the intent to commit larceny in violation of Ohio Rev.Code § 2907.10 (repealed eff. 01/01/1974), and unlawfully stealing property valued in excess of $60.00 in violation of Ohio Rev.Code § 2907.20 (repealed eff. 01/01/1974). Zellars received a suspended sentence and was placed on probation for three years. In 1976 Zellars was found to be in violation of the terms of his probation and was sentenced to concurrent terms of not less than six months or more than five years in the Ohio State Penitentiary. Zellars was paroled on March 4, 1977, and obtained his final release on June 26, 1978.[2]
>
> The . . . [second] charges stem from Zellars's arrest on December 31, 2006, for operating a motor vehicle under the influence of intoxicants. At the time of his arrest Zellars was discovered to be in possession of a .22 caliber revolver and ammunition. During a subsequent [January 5, 2007] search of his apartment, federal agents found a second handgun, a ballistic vest, and additional ammunition.

*United States v. Zellars*, 334 F. App'x 742, 743 (6th Cir. 2009).

The second incident led to Zellars' prosecution in this Court. The docket reveals that he was the Defendant in *United States v. Randall Thomas Zellars*, Lon. No. 07-CR-00008-DCR-REW. On January 25, 2007, Zellars was indicted on three federal counts: being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1); being in possession of body armor after being convicted of a crime of violence, in violation of 18 U.S.C. § 931; and a criminal forfeiture count. Unpublished opinions reveal background details of that proceeding.

One of Zellars' first defensive actions in the criminal case here, by counsel, was to bring a Motion to Suppress evidence and admissions which had been obtained on the January 5th date,

---

[2] The Court of Appeals noted that these dates were certified by the custodian of the Ohio Department of Rehabilitation and Correction who indicated that, in accordance with the department's ten-year retention schedule, all paper documents pertaining to Zellars' 1973 state conviction have been destroyed.

when Manchester's Assistant Police Chief, named Jeff Culver, took him to meet with federal agents. At that meeting, Zellars signed a *Miranda* waiver, admitted to both a prior conviction and his possession of a gun at the time of his arrest, and consented to a search of his premises where additional items were found to support federal charges against him.

After a hearing on the matter before a Magistrate Judge, the Court adopted the resulting Report and Recommendation and denied the suppression motion on the merits. The Court held that Zellars' waiver of his *Miranda* right was knowing, voluntary, and intelligent; and that his consent to a search of his premises also was freely and voluntarily given. There was no illegality to either. *See United States v. Zellars*, No. 07-08-DCR, 2007 WL 1536815 at *4 (E.D. Ky. May 24, 2007).

Additionally, the then-Defendant/now-Plaintiff moved for dismissal of the criminal case, based upon his claim that the prior conviction was not a predicate offense for a Section 922(g)(1) charge. He fared no better on this issue. The Court concluded that the government had met its burden of demonstrating the existence of the prior conviction, for burglary, and the corresponding loss of civil rights, and that Zellars had not carried his burden to produce evidence showing that his civil rights, including the firearms rights, had been restored by the State of Ohio. *See United States v. Zellars*, N0 07-08-DCR, 2007 WL 1590946 at *4 (E.D. Ky. May 31, 2007).

In June of 2007, pursuant to a plea agreement, Zellars entered guilty pleas to all counts, those to Counts 1 and 3 being conditional, however. He reserved the right to appeal the issue of whether his prior conviction constitutes a predicate felony to support his indictment/conviction under the first Count, Title 18 United States Code § 922(g)(1). [R. 61.] On September 24, 2007,

Zellars was sentenced to two concurrent, twenty-four-month terms of imprisonment and a three-year term of supervised release.

Plaintiff appealed his Section 922(g)(1) conviction on Count One on the one ground which he had reserved and also appealed the sentence imposed on Count II, as its length was influenced by Counts I and II being together. Almost two years later, on June 17, 2009, the Sixth Circuit issued its opinion. The Sixth Circuit summarized the factual and legal background of both criminal actions, and noted that "[t]he central issue in this case concerns the impact of Zellars's prior felony conviction on the current charge of felon in possession of a firearm." *Zellars*, 334 F. App'x at 743.

After an exhaustive study of Ohio law since 1973, the appellate court reversed this Court's denial of Zellar's Motion to Dismiss, ruling that his 1973 conviction was not for a crime of violence and that his civil rights had been restored by operation of Ohio law. The Sixth Circuit, therefore, reversed his conviction on Count I, ordered his sentence on Count I vacated, and remanded for re-sentencing on Count II, since it had a lesser guideline range standing alone.

Upon remand, on August 3, 2009, this Court vacated the conviction on Count I, re-sentenced Plaintiff to time served, and ordered a refund of a $100 special assessment which Zellars had paid. Four months later, on December 3, 2009, the Plaintiff filed the instant action for damages.

Naming Chief of Police Jeff Culver and the City of Manchester as the Defendants, Plaintiff Zellars reveals that he was imprisoned for sixteen months, and makes additional allegations about the events of January 5, 2007, beginning as follows:

> \* I was locked up in the Clay County Detention Center, when Jeff came and took me out of the jail. He didn't have (no) paper work for me to be released at the

4

> jail. He removed me from the jail on his own, and without any court order. He violated my due process and "equal protection" rights guaranteed [sic] to me under the law. When I ask him where he was taking me, and I told him I wanted to see my lawyer he told me (no. . . .) a lawyer couldn't help me. He ask me about *Mayor Daugh (Doug) White*, and Former Police chief (Todd Roberts). He also violated my rights under the color of the law. (United States) v/s (Price). He made "false" accusations to the federal court system. Also the "ATF" agent who was on Jeff's side,* said that I didn't have any gun rights back from Ohio, and I (did) have my gun rights back. I won my appeal in front of the United States Sixth Circuit.
> . . .

[R. 2, at pp. 2-3.] Presumably, the matter which the Plaintiff "won" on appeal was the challenge to his conviction on the predicate offense issue of Count I, as he prevailed on the appeal as to this legal issue, obtained a reversal of that conviction, and was released from prison.

In addition to the above-quoted allegations, Plaintiff repeats the arguments which he used in his unsuccessful pre-trial motions. He again attacks the waiver of his *Miranda* rights, contending that the signature on the waiver is not his, his name not even being spelled correctly; and "they was saying if I didn't answer my questions It be a long time before I could see my family," claims which appeared in his unsuccessful Motion to Suppress in the District Court.

Plaintiff lists hardships suffered by his daughter, himself, his family, and "[m]y fiancee [who] had to do without me for 16 month it was very hard on her without me being there and the loss of 'consortium . . . .'" [R. 2 at 3.] He seeks damages, including punitive damages, from Manchester's Police Chief Culver and the City itself.

After submitting the Complaint herein, Plaintiff Zellars undertook service of the Complaint and summons on the two named Defendants. The record shows that a person identifying herself as a "friend," Mechelle J. Fair, has returned the proof of summons forms in which she attests to service of process on Jeff Culver, evidently personally, and on the City of

Manchester, by leaving the Complaint and Summons with a Tammy Bowling. [R. 5-6.] When both Defendants failed to respond within twenty days, Zellars moved for a default judgment.

More than a month later, the Defendants, by shared counsel, responded with two pleadings. One was a Motion for extension of time to respond to the Complaint on the ground that "the City has been attempting to have its insurance carrier provide for the defense of this litigation and through inadvertence, the matter was only recently placed into the hands of the undersigned counsel." This requested extension of time for filing an Answer was granted.

The Defendants' second pleading was a Response [R. 9] to the Motion for a Default Judgment. They argue that default judgments are not favored in the law, that the service by Plaintiff's "friend" is not proper, and that service on the City was improper under Rule 4 of the Federal Rules of Civil Procedure because the Mayor was not the person who was served.

The *pro se* Plaintiff has filed replies to the Motion [R. 10-11] in which he complains of the Defendants' in-the-alternative pleading. He has also submitted an unauthorized Reply to the Defendants' Answer [R. 15] wherein he describes Culver's taking him to see the federal agents as a kidnapping. He does not, however, add to any facts or relevant law. Because Zellars is proceeding *pro se*, and the Defendants have been permitted to file Supplements herein, the Court will permit the Plaintiff's Reply and deny the Defendants' recent Motion to Strike that pleading.

As to service of process, Plaintiff states that he followed the advice of a city worker, and the person served at the City confirmed that she received summons and that she would give the papers to the Mayor. Plaintiff ends these pleadings with a request for a timely grant of his Motion for the Default Judgment.

In addition to their Answer, the Defendants have submitted a separate Supplemental

6

Response in opposition to the Default Motion. Within that Response, the Defendants adopt their previous grounds for urging denial of the Plaintiff's Motion for Default Judgment. They also add the following arguments: the insurance company has still not picked up the case, a situation for which they were unprepared; their conduct was in good faith reliance on the carrier; they have meritorious defenses; and the Plaintiff has not been prejudiced or disadvantaged by their tardiness.

## II.

The Court will not reach the issue of whether service of process was proper or the Defendants were in default because the Court concludes that this case must be dismissed for the Plaintiff's failure to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff brought this action pursuant to 42 U.S.C. § 1983. To establish a right to relief under § 1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Street v. Corr.Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

The only allegation against Defendant Culver is that he did not present Plaintiff with any document showing that he had permission to take Plaintiff from the jail cell to meet with the federal authorities. The federal authorities might well have come to him. Where is the due process violation? What paperwork requirement was violated to Plaintiff's detriment? Also, how was the Defendants' lack of paper or the place of the meeting the cause of the Plaintiff's injuries? *See Manthey v. Hunter*, 81 F. App'x 560, 2003 WL 22746086 at **2 (6th Cir. 2003)

("Manthey made no attempt to link the constitutional provisions he cited to any factual allegations"). Basic pleading requirements are not met in this case. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

As to Plaintiff's purported equal protection claim, "To state a claim under the equal protection clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir. 1995) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). In short, the inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)). This requirement is utterly lacking in this case. An equal protection claim which is not supported by factual allegations is dismissable as being only conclusory. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971). Thus, this claim, too, will be dismissed.

With regard to the other Defendant, Plaintiff states absolutely no basis for his naming the City of Manchester, Kentucky, as a Defendant. To the extent that he named the City based on a supervisory liability theory in order to reach a deep pocket for damages and/or save the police chief, with whom Zellars is on a first name basis, from any financial hardship, Zellars is advised that *respondeat superior* is inapplicable to Section 1983 actions, as the Supreme Court held in *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

Under *Monell*, city liability is limited to situations in which the deprivation of constitutional rights *results* from an official policy or custom. The mandate of *Monell* and its

8

progeny requires (1) that a municipality be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell,* 436 U.S. at 694; and (2) that there is an "affirmative link between the policy and the particular constitutional violation alleged," *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). The instant Plaintiff has alleged neither *Monell* requirement so as to state a claim against the City of Manchester. Nor has he shown a causal connection between a policy or custom of the Defendant City and his claims. *Cummings v. City of Akron*, 418 F.3d 676, 684-85 (6th Cir. 2004) (no causal link and a violation of the Plaintiff's constitutional rights).

Even had Plaintiff supplied a sufficient factual background to state cognizable claims, his claims are untimely. The State statute of limitations for personal injuries governs claims under the federal constitution and 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261 (1985). Kentucky's statute of limitations is the one-year period found in K.R.S. 413.140; *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)).

In *Fox v. DeSoto*, 489 F.3d 227 (6th Cir. 2007), the appellate court in this circuit discussed the accrual of pre-trial claims. It noted that under Kentucky law, claims of false arrest and false imprisonment generally accrue at the time of the arrest when law enforcement is involved. *Id*. at 233. It is federal law which determines when the statute of limitations starts to run for purposes of a Section 1983 action. *Id*. The Sixth Circuit pointed out that in *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court "specifically held that a claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal

9

process ends." *Id*. (citing *Kato*, 549 U.S. at 489).

In the current case, Plaintiff's claims are not about his arrest but are about events involving the police five (5) days later, on January 5, 2007. By the end of January of 2007, the legal wheels of a criminal prosecution had begun to turn. Plaintiff had been indicted and he was thereafter detained pursuant to legal process. Yet, he did not bring this cause of action alleging violations of his constitutional rights until this year, 2010, three years later and two years past the running of the one-year statute of limitations. Therefore, to the extent the Plaintiff charges that Defendant Culver or the City of Manchester violated his due process and/or equal protection rights on January 5, 2007, the claims are time-barred under State and federal law.

Perhaps, upon reversal of his conviction, this Plaintiff, like Fox, believed that he was entitled to bring this lawsuit because of *Heck v. Humphrey*, 215 U.S. 477 (1994) and certain case law flowing from that decision. In *Heck v. Humphrey*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87. *See also Schilling v. White*, 58 F.3d 1081 (6th Cir. 1995). As the instant Plaintiff's conviction was reversed last year, he may have reasoned that he was now entitled to bring the Section 1983 action against the person and his employer, the City of Manchester, who took him

to meet with federal agents on January 5, 2007.

Fox, too, had argued that the statute of limitations did not begin until the reversal of his conviction. While it is true that a Section 1983 claim for malicious prosecution will accrue and start the running of the limitations period upon reversal, the Sixth Circuit wrote, the Supreme Court "in *Wallace* clarified that the Heck bar has no application in the pre-conviction context." *Fox*, 489 F.3d at 234. Additionally,

> *Wallace* clarifies the distinction between claims of malicious prosecution, such as the one addressed in Heck, and claims of false arrest and false imprisonment. As noted above, Heck held that a claim of malicious prosecution does not accrue until the underlying conviction is invalidated, 512 U.S. at 489-90 . . . and this holding was reaffirmed in *Wallace* . . . . The statute of limitations for a claim for false arrest, however, "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 1100. . . . Accordingly, the possibility that the plaintiff's already-accrued § 1983 claims might impugn an anticipated future conviction did not trigger the Heck rule for deferred accrual. Thus, we not only affirm the dismissal of the state law claims as time-barred, but also find that the plaintiff's Fourth Amendment claims were likewise barred by the one-year statute of limitation and should have been dismissed as untimely.

*Id.* at 235. The same holds true in this case.

Moreover, it can be said that after losing on his suppression motion in the trial court, the instant Plaintiff waived his right to collaterally attack his conviction when he pled guilty. The plea agreement which he signed contains the following provision:

> 8. With the exception of the Defendant's right to appeal the denial of his pretrial motion to dismiss Count I, the Defendant waives the right to appeal and the right to attack collaterally the guilty plea, and conviction, including any order of restitution.

[Plea Agreement, E.D. Ky. 6:09-CR-00008-DCR, Docket Entry No. 67, at p. 4.]

Plaintiff thus specifically retained the right to challenge the conviction only on the predicate offense issue. He did not preserve a right to challenge the ruling on the voluntariness

issues in his suppression motion. Having lost on the voluntariness of his actions on January 5, 2007, in the trial court, preserving only his right to challenge his conviction on the predicate offense issue, and waiving all other challenges directly or collaterally, the Plaintiff may not now challenge his conviction on these voluntariness issues, in a civil action. *See Donovan v. Thames*, 105 F.3d 291, 293-94 (6th Cir. 1997) (citing *Allen v. McCurry*, 449 U.S. 20, 102 (1980)), which held that *res judicata* prevents a criminal defendant from re-litigating his Fourth Amendment claims in a civil suit once he has done so and lost in his criminal case); *Groves v. Battani*, No 3:08-CV-466, 2008 WL 4682619 at *2 (N.D. Ind. October 20, 2008) (also relying on *Allen v. McCurry*).

### III.

Accordingly, **IT IS ORDERED** as follows:

1. Defendants' Motion to Strike [R. 16] is **DENIED**.

2. This action is **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants; and

3. Plaintiff's Motion for Default Judgment [R. 7] is **DENIED** as moot.

This the 1st day of June, 2010.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge